IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOHN PAVAO,

      Plaintiff,

v.                                                                    CASE NO. 5:15-cv-68-RH-GRJ

SGT. MILES, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Defendant Dr. Jorge Alvarez's

Motion for Summary Judgment and Memorandum in Support. (ECF No.

89.) Plaintiff has filed a response in opposition to Dr. Alvarez's motion.

(ECF No. 96.) The motion is ripe for review. For the reasons discussed

below, it is recommended that Dr. Alvarez's motion for summary judgment

should be granted.

## I.  INTRODUCTION

Plaintiff, an inmate in the custody of the Florida Department of

Corrections ("FDOC"), is proceeding *pro se* pursuant to 42 U.S.C. § 1983.

(ECF No. 1.) Plaintiff's sole claim against Dr. Alvarez arises from the

treatment Dr. Alvarez provided—or failed to provide—for the broken leg

Plaintiff sustained while in custody at Apalachee Correctional Institution

("Apalachee CI"). Plaintiff asserts that Dr. Alvarez was deliberately

indifferent to Plaintiff's serious medical needs, in violation of the Eighth

Amendment.

Dr. Alvarez has filed a motion for summary judgment, arguing that

the evidence demonstrates he was not deliberately indifferent to Plaintiff's

serious medical needs. Dr. Alvarez says he is, therefore, entitled to

judgment as a matter of law. (ECF No. 89.) In support of his motion, Dr.

Alvarez has submitted: (1) an affidavit of Dr. Alvarez, (ECF No. 89-1,

"Alvarez Aff."); and (2) Plaintiff's medical records, (ECF No. 89-2, "Pavao

MR".)

Plaintiff has not provided any affidavits or records in support of his

claim. Pursuant to Fed. R. Civ. P. 56(e),

> [i]f a party fails to properly support an assertion of fact or fails
> to properly address another party's assertion of fact as required
> by Rule 56( c), the court may:
> (1) give an opportunity to properly support or address the
> fact;
> (2) consider the fact undisputed for purposes of the
> motion;
> (3) grant summary judgment if the motion and supporting
> materials—including the facts considered undisputed—show
> that the movant is entitled to it; or
> (4) issue any other appropriate order.

In this case, Plaintiff has not submitted any sworn affidavits in opposition to summary judgment.[1] 28 U.S.C. § 1746 provides, however, that,

> [w]herever, under any . . . rule, . . . any matter is required or permitted to be supported, evidence, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidence, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated[.]

Although Plaintiff did not submit any sworn affidavits, Plaintiff's complaint is signed under penalty of perjury. (ECF No. 1.) Thus, Plaintiff's complaint is properly treated by the Court like a sworn affidavit. *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a

---

[1] Plaintiff provided his response to Dr. Alvarez's motion to prison officials for mailing on February 12, 2016, only four days after Dr. Alvarez filed his motion for summary judgement. (ECF No. 96.) Plaintiff was later advised that "all material facts asserted in [a] motion [for summary judgment] will be considered admitted unless controverted by proper evidentiary materials (e.g., Plaintiff's sworn counter-affidavit, other witnesses' sworn counter-affidavits, depositions, exhibits, etc.)," and that "Plaintiff may not rely solely on the allegations of the issue pleadings (e.g., complaint, answer, etc.) in opposing the summary judgment motion." (ECF No. 106.) Although the Court's notice specifically addressed Defendants Carson, Jenkins, Johnson, Miles, and Swearinger's motion for summary judgment, (ECF No. 100), Plaintiff was nonetheless informed that he must provide proper evidentiary material in opposing a motion for summary judgment. (ECF No. 106.) Following the Court's April 22, 2016 notice, Plaintiff declined to submit any additional evidentiary materials in support of his claim against Dr. Alvarez.

separate affidavit is not necessary."). Accordingly, Plaintiff's sworn

allegations in his complaint may be considered in ruling on the motion for

summary judgment.[2]

## II.  EVIDENCE

Dr. Alvarez is a Medical Doctor licensed by the State of Florida and

employed by Corizon, LLC, as the Medical Director at Apalachee CI.

(Alvarez Aff. ¶ 2.) Dr. Alvarez treated Plaintiff on February 17, 2015,

following an assault by another inmate who put a lock inside of a sock and

struck Plaintiff in the back of the head. (*Id.* ¶ 7; Pavao MR at 1; ECF No. 1

at 7.) Plaintiff sustained a five-centimeter laceration on his scalp and a

one-inch laceration on his left leg. (Pavao MR at 1.) Dr. Alvarez closed the

lacerations with sutures, gave Plaintiff a tetanus booster, prescribed

Bactrim and Motrin for seven days, and placed Plaintiff in 23-hour

observation with neurological checks every two hours. (*Id.*)

Plaintiff had X-rays taken of his left leg the next day, February 18,

2015. (Pavao MR at 2–3.) Later that day, Dr. Alvarez saw Plaintiff for a

follow-up. (Alvarez Aff. ¶ 7; Pavao MR at 2.) Plaintiff's lacerations were

dressed and there was no active bleeding. With respect to Plaintiff's X-rays

---

[2] Consequently, the facts asserted by Plaintiff upon which the undersigned will rely for purposes of this Report and Recommendation are contained within Plaintiff's sworn complaint, (ECF No. 1.)

earlier that morning, Dr. Alvarez's note states, "[n]o preliminary fx seen.
Pending official report." (Pavao MR at 2.) Plaintiff was released from
observation that same day. (*Id.* at 2.)

Plaintiff's X-rays ultimately showed "a possible small avulsion fracture
arising from the anterior aspect of the distal tibia." (Pavao MR at 3.)
Otherwise, the tibia and fibula appeared to be within normal limits, the soft
tissues appeared to be intact, and the joint spaces appeared to be
maintained. (*Id.*)[3]

On February 21, 2015, sometime between 8:30 a.m. and 9:00 a.m.,
Plaintiff was involved in a use of force incident with Defendants Miles,
Swearinger, Carson, Jenkins, and Johnson. (Dr. Alvarez Aff. ¶ 8; Pavao
MR at 10; ECF No. 1 at 6.) At 9:15 a.m., Plaintiff went to medical. (Pavao
MR at 4.) At that time, Plaintiff complained to a nurse of lower left leg pain.
(*Id.*) The nurse's notes document the head and left leg injuries from the
inmate assault on February 17, 2015, as well as a small superficial scratch
and interrupted scab on Plaintiff's right elbow with minimal bleeding. (*Id.* at
6.) At the time, there was no swelling, numbness, tingling, or deformities to
Plaintiff's left leg. (*Id.* at 4) Plaintiff was able to move his left leg and the

---

[3] It is unclear when exactly Dr. Alvarez learned of the impression. The radiology
report in evidence, however, shows a February 24, 2015 receipt date by Apalachee CI.
(Pavao MR at 3.)

skin was intact. (*Id.*) The nurse advised Plaintiff to elevate his left leg,

continue the ibuprofen as ordered, and immediately report any skin

discoloration, coolness, tingling, numbness, or increase in pain. (*Id.*)

Plaintiff reported to medical again on February 22, 2015, complaining

of left leg swelling and pain that had started the day before. (Pavao MR at

7.) The attending nurse noted slight indentation/pitting, but no erythema,

warmth, or deformities. (Pavao MR at 8.) The sutures were also intact. (*Id.*)

Also documented were multiple bruises to both arms consistent with the

use of force incident on February 21, 2015. (Alvarez Aff. ¶ 8; Pavao MR at

10.)[4]

Plaintiff returned to medical the next day, stating that during the use

of force incident, he fell while being forced out of his cell and felt his ankle

crack. (Alvarez Aff. ¶ 9; Pavao MR at 11.) Plaintiff's leg ankle was swollen

and painful but there were no deformities. (*Id.*) The same scalp and left leg

lacerations from the February 17, 2015 inmate assault were also

documented. (*Id.*) Plaintiff's lacerations were dressed, however, and were

not actively bleeding. (*Id.*) Dr. Alvarez ordered X-rays of Plaintiff's ankle

_____

[4] It is unclear whether the bruises were documented on February 22, 2015 or
February 23, 2015. Dr. Alvarez says they were documented on February 22, 2015.
(Alvarez Aff. ¶ 8.) Plaintiff's medical records, however, indicate that they were
documented on February 23, 2015. (Pavao MR at 10.)

that week. (*Id.*) Plaintiff was advised to comply with his medications and return to medical if his symptoms got worse. (Pavao MR at 11.)

On February 24, 2015, a nurse noticed excessive swelling while removing Plaintiff's sutures. (Pavao MR at 9.) The nurse informed Dr. Alvarez, who then ordered that Plaintiff be admitted into the infirmary that day. (Alvarez Aff. ¶ 10; Pavao MR at 9.) Upon Plaintiff's admission to the infirmary, Plaintiff complained of leg pain. (Alvarez Aff. ¶ 10; Pavao MR at 14.) Dr. Alvarez examined Plaintiff and ordered the intravenous administration of Rochepin, an antibiotic. (Alvarez Aff. ¶ 10; Pavao MR at 14–15.)

Plaintiff's left ankle pain and swelling remained on February 25, 2015. (Alvarez Aff. ¶ 10; Pavao MR at 16.) X-rays were taken, which showed a new spiral fracture of the left tibia. (Alvarez Aff. ¶ 11; Pavao MR at 16–17.) The visualized fibula was intact. (Pavao MR at 17.) The fracture was a mildly displaced fracture of the distal fracture fragment and one quarter shaft anterior displacement. (Alvarez Aff. ¶ 11; Pavao MR at 16–17.) Plaintiff had left leg edema and ecchymosis, but there was no active bleeding noted. (*Id.*)

At approximately 10:30 a.m, after Dr. Alvarez discovered the fracture,

he applied a splint to stabilize Plaintiff's leg. (Alvarez Aff. ¶ 13; Pavao MR

at 16.) According to Dr. Alvarez,

> [t]he lower leg is made up of two bones: the tibia and fibula.
> The tibia is the larger of the two bones. When a bone breaks
> and is displaced, the broken ends are separated and do not
> line up. These types of fractures frequently require surgery to
> repair. Most injuries cause some swelling for the first few
> weeks. Accordingly, the standard of care includes application of
> a split to provide comfort and support. Unlike a full case, a
> splint can be tightened or loosened, and allows swelling to
> occur safely. Splints are used to immobilize musculoskeletal
> injuries while diminishing pain and promoting healing.

(Alvarez Aff. ¶ 12.)

At 1:00 p.m., medical submitted a consultation request for Plaintiff to

see an orthopedist for an ORIF. (Alvarez Aff. ¶ 13; Pavao MR at 16, 18.)

According to Dr. Alvarez, an ORIF is a two-part surgery used to fix broken

bones. (Alvarez Aff. ¶ 13.) First, the broken bone is reduced or put back

into place. (*Id.*) Secondly, an internal fixation device is placed on the bone.

(*Id.*) An ORIF is the standard of care for treatment for the type of fracture

Plaintiff endured. (*Id.*) A hospital would not immediately provide surgery

because it is not an open fracture. (*Id.*) Surgery would not be an option

until the swelling went down. (*Id.*) The first choice of treatment is always

non-surgical—unless the fracture is an open fracture—because there are

risks associated with surgery. (*Id.*)

In Dr. Alvarez's medical judgment, nothing suggested that Plaintiff's condition presented an emergency or that Plaintiff's condition could not be managed at the infirmary until Plaintiff could be transferred to see a specialist. (*Id.* ¶ 14.) Dr. Alvarez planned to follow-up regarding the consultation request in one week to determine the date of Plaintiff's appointment. (*Id.*) Plaintiff says that Dr. Alvarez also told Plaintiff that Plaintiff needed steel plates to fix his leg. (ECF No. 1 at 8.)

When Dr. Alvarez re-examined Plaintiff on February 26, 2015, Plaintiff's left leg was still swollen. (Alvarez Aff. ¶ 15; Pavao MR at 19.) Dr. Alvarez documented that his consultation request for Plaintiff to see an orthopedist had been approved. (*Id.*) Plaintiff was placed on long-term admission until his transfer to the orthopedist. (Pavao MR at 19.) From February 17, 2015, through the end of February 2015, Plaintiff was prescribed and taking the antibiotics Rocephin, Bactrim, or Septra, as well as ibuprofen for pain. (Alvarez Aff. ¶ 16; Pavao MR at 20–22.)

Dr. Alvarez has no control over how long it takes for patients to be scheduled with specialists. (Alvarez Aff. ¶ 15.) Dr. Alvarez's role is limited to submitting the request to Utilization Management ("UM"). (*Id.*) After UM approves the request, the specialist appointment is scheduled by other staff. (*Id.*)

Dr. Alvarez next examined Plaintiff on March 5, 2015. (Alvarez Aff. ¶ 17; Pavao MR at 23.) Although Plaintiff's leg was slightly swollen, Plaintiff reported feeling fine, his leg had good pulses, and the wound was healing. (*Id.*) Plaintiff was not feverish and he denied shortness of breath, chest pain, or extreme leg pain. (*Id.*) Dr. Alvarez planned to continue monitoring Plaintiff until Plaintiff could be transferred to see an orthopedist. (Alvarez Aff. ¶ 17.) That same day—March 5, 2015—Plaintiff's orthopedist appointment was scheduled for March 24, 2015. (Pavao MR at 18.)

Dr. Alvarez examined Plaintiff again on March 9, 2015, at which time Plaintiff's condition was largely unchanged. (Alvarez Aff. ¶ 17; Pavao MR at 24.) On March 16, 2016, pending Plaintiff's transfer for ORIF, Dr. Alvarez examined Plaintiff and noted that Plaintiff's leg was less swollen and his wounds were healed. (Alvarez Aff. ¶ 18; Pavao MR at 25.)

Plaintiff was transferred from Apalachee CI to the Reception and Medical Center ("RMC") on March 16, 2016. (Alvarez Aff. ¶ 18; Pavao MR at 26–27.) Plaintiff's transfer form noted that Plaintiff had a consult pending for March 24, 2015. (Pavao MR at 26–27.)

Plaintiff saw Carlos Esquiva, M.D., an orthopedist, on March 24, 2015. (Pavao MR at 28–29.) Dr. Esquiva's notes indicate that additional X-rays were taken, which confirmed Plaintiff's tibia fracture. (Pavao MR at

29.) Dr. Esquiva noted that the fracture was 31 days old. (*Id.*) Plaintiff says that Dr. Esquiva told Plaintiff that Dr. Alvarez waited too long to send Plaintiff to see him because Plaintiff's leg was already in the healing process. (ECF No. 1 at 8.) Plaintiff's X-rays, however, showed that Plaintiff's splint had preserved the alignment of the tibia. (Pavao MR at 29.) Plaintiff also reported feeling better. (*Id.*) Dr. Esquiva applied a cast to Plaintiff's leg to be worn for three months. (*Id.*) Dr. Esquiva also recommended that a consult be considered for Plaintiff to see a trauma specialist for surgical alternative treatment. (*Id.*)

Plaintiff says that his leg probably will never heal properly and instead will be damaged for life. (ECF No. 1 at 8.) Dr. Alvarez attests that he did not disregard a known risk of harm to Plaintiff. (Alvarez Aff. ¶ 20.) Further, Dr. Alvarez say that at all times he based his treatment decisions on his medical judgment and that the treatment he provided to Plaintiff was appropriate. (*Id.*)

## III.  STANDARD OF REVIEW

In accordance with Rule 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the

pleadings, depositions, answers to interrogatories, and admissions on file,

together with any affidavits and other evidence in the record "in the light

most favorable to the nonmoving party." *Samples on Behalf of Samples v.*

*Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held

in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears

the initial burden of establishing the nonexistence of a triable issue of fact.

If the movant is successful on this score, the burden of production shifts to

the non-moving party who must then come forward with "sufficient

evidence of every element that he or she must prove." *Rollins v.*

*Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).

The non-moving party may not simply rest on the pleadings, but must

use affidavits, depositions, answers to interrogatories, or other admissible

evidence to demonstrate that a material fact issue remains to be tried. *See*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v.*

*Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005).

> In civil actions filed by inmates, federal courts must distinguish
> between evidence of disputed facts and disputed matters of
> professional judgment. In respect to the latter, our inferences
> must accord deference to the views of prison authorities.
> Unless a prisoner can point to sufficient evidence regarding
> such issues of judgment to allow him to prevail on the merits,
> he cannot prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

The evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-movant. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). But, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted).

## IV.  DISCUSSION

Plaintiff claims that Dr. Alvarez was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. Plaintiff says that Dr. Alvarez knew Plaintiff needed an operation, kept reassuring Plaintiff that Plaintiff would be sent to see a specialist, and ultimately, did not send him to see the specialist soon enough. Dr. Alvarez, however, asserts that the evidence does not support a constitutional claim because Plaintiff received adequate and appropriate care for his broken

leg. (ECF No. 89.) Thus, Dr. Alvarez argues that he is entitled to summary judgment as a matter of law. (*Id.*)

The Eighth Amendment provides the right to be free from cruel and unusual punishment. U.S. Const. amend. VIII. Deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

To establish an Eighth Amendment violation stemming from the deprivation of medical attention, a prisoner must set forth evidence of an objectively serious medical need and prove that the officials acted with attitudes of deliberate indifference to his needs. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A plaintiff has a "serious medical need" when the condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994). To show that the prison official was deliberately indifferent, the plaintiff must prove that: (1) the prison official had a subjective knowledge of a risk of serious harm; (2) the prison official disregarded that risk; and (3) did so by conduct that is more than mere negligence. *Brown v. Johnson*, 387 F.3d 1344,1351 (11th Cir.

2004); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (the prisoner must demonstrate that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference. *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle*, 429 U.S. at 107) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.'"); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain

minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

Where the case turns on an alleged delay in providing medical care, rather than the type of medical care provided, courts should consider: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay. *Goebert v. Lee Cnty.,* 510 F.3d 1312, 1327 (11th Cir. 2007) (*citing Hill*, 40 F.3d at 1189).

In this case, both parties agree that Plaintiff's tibia fracture was an objectively serious medical need. (EFC No. 89 at 14 n.3); *see also Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (discussing how a broken foot can be a serious injury, with which, "it may be that deliberately indifferent delay, no matter how brief, would render defendants liable"); *Milton v. Spann*, No. 5:05cv89-RS/WCS, 2007 WL 1099114, at *16 (N.D. Fla. Apr. 10, 2007 (noting that "clearly established law requires finding that a broken bone is a serious medical needs"). The question in this case, therefore, is whether Dr. Alvarez was deliberately indifferent.

Plaintiff says that Dr. Alvarez should have sent Plaintiff to see a specialist the day after Dr. Alvarez discovered Plaintiff's fractured tibia. (ECF No. 1 at 8; ECF No. 96 at 1.) But, Dr. Alvarez argues that although

Plaintiff wanted to be sent to a hospital immediately, Plaintiff received appropriate care at the infirmary.

The undisputed evidence demonstrates that Dr. Alvarez provided adequate and timely care. As soon as Dr. Alvarez learned that Plaintiff had a fractured tibia, Dr. Alvarez applied a splint to stabilize Plaintiff's leg. (Alvarez Aff. ¶¶ 11, 13; Pavao MR at 16.)[5]  According to the evidence, where a fracture causes swelling—such as it did to Plaintiff—the standard of care is to apply a splint to provide comfort and support while allowing the swelling to occur safely. (Alvarez Aff. ¶ 12; Pavao MR at 9, 11, 16.)

Despite Plaintiff's belief that Dr. Alvarez should have immediately sent Plaintiff to the hospital for surgery, the undisputed evidence shows that an ORIF is the standard of care for this type of fracture. (Alvarez Aff. ¶ 13.) Surgery was not even an option for Plaintiff until his swelling went down because his fracture was not an open fracture. (*Id.*) No reasonable juror could conclude that Dr. Alvarez took improper action by applying a splint to Plaintiff's leg instead of immediately sending him to the hospital.

---

[5] Although Plaintiff's February 18, 2015 X-ray showed a "possible small avulsion fracture arising from the anterior aspect of the distal tibia," (Pavao MR at 3), Plaintiff does not challenge Dr. Alvarez's treatment following his February 18, 2015 X-ray. Plaintiff's claim focuses solely on Dr. Alvarez's treatment following his February 25, 2015 X-ray.

Furthermore, Dr. Alvarez provided antibiotics and ibuprofen for pain. (Alvarez Aff. ¶ 16; Pavao MR at 20–22.) There is no evidence suggesting that Dr. Alvarez was deliberately indifferent to a risk of infection or to Plaintiff's pain.

Moreover, Dr. Esquiva's notes reveal that Plaintiff's splint had preserved the alignment of Plaintiff's tibia. (Pavao MR at 29.)  And although Dr. Esquiva's notes mention how the fracture was 31 days old, nothing in Dr. Esquiva's notes suggests that Dr. Alvarez did anything improper or made Plaintiff's situation worse.  Furthermore, even if Dr. Alvarez's treatment was considered negligent, such would not constitute an Eighth Amendment violation. *See McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999).

Plaintiff has also failed to prove that the alleged delay in seeing a specialist worsened his condition. *See Goebert*, 510 F.3d at 1329 (where a plaintiff alleges that his treatment was delayed, the question is whether the delay worsened the inmate's condition). Dr. Alvarez immediately submitted an ORIF consultation request to UM. (Alvarez Aff. ¶ 13; Pavao MR at 16, 18.) Plaintiff has not provided any evidence—or even allegations—that demonstrates Dr. Alvarez had control over scheduling once Dr. Alvarez submitted the consultation request. Furthermore, although Dr. Alvarez

noted that he would follow-up on the consultation request in one week, the evidence shows that the consultation request was approved the very next day. (Alvarez Aff. ¶¶ 14–15; Pavao MR at 19.) Thus, no reasonable juror could conclude that Dr. Alvarez was deliberately indifferent by failing to follow-up on the consultation request. There is simply no evidence suggesting that the alleged delay was attributable to Dr. Alvarez.

Even assuming, *arguendo*, Dr. Alvarez had delayed Plaintiff's treatment—which he did not—there is no evidence suggesting that the delay somehow worsened his condition. *Cf. Goebert*, 510 F.3d at 1329 (defendant was not entitled to summary judgment on the merits where the evidence supported the conclusion due to plaintiff's dire medical need, time was of the essence, and the delay attributable to the defendant's deliberate indifference may have caused the loss of plaintiff's child). Despite Plaintiff's claim that Dr. Esquiva said Dr. Alvarez waited too long to send Plaintiff to see him because Plaintiff's leg was already in the healing process, Plaintiff has not provided any evidence to support this assertion. While the Court may consider Plaintiff's sworn allegations for summary judgment purposes, the sworn allegations must, nonetheless, be admissible. *Macuba v. Deboer*, 193 F.3d 1316, 1326 (11th Cir. 1999). Whatever Dr. Esquiva told

Plaintiff is inadmissible hearsay and, therefore, cannot be considered on a motion for summary judgment.[6]

Finally, although Plaintiff asserts in his response that he (1) ultimately needed surgery on December 19, 2015, (2) suffered from a bad infection following surgery, (3) has constant leg pain, and (4) now has steel plates and screws in his leg,[7] Plaintiff's response was not a sworn declaration, nor was it filed under penalty of perjury.  Accordingly, the Court cannot consider this information when ruling on Dr. Alvarez's motion for summary judgment.

Even if the Court could consider this information, it would not change the analysis. Plaintiff has provided no evidence suggesting that Dr. Alvarez's actions somehow caused his pain or the infection—which Plaintiff developed after his surgery performed by another doctor.  And if Plaintiff does have steel plates and screws in his leg, according to Plaintiff's own

---

[6] Inadmissible hearsay is an out-of-court statement offered to prove the truth of the matter asserted, that does not fall within an exception to the hearsay rule. *See generally* Fed. R. Evid. 801-04. Dr. Esquiva's statement to Plaintiff is hearsay because it is being offered for it's truth: that Dr. Alvarez did not send Plaintiff to see a specialist soon enough and that his delay caused Plaintiff's injury. *See* Fed. R. Evid. 801(c). Additionally, Dr. Esquiva is not a party to this case. *See* Fed. R. Evid. 801(d)(2) (an opposing party's statement is not hearsay). Further, none of the hearsay exceptions would appear to apply at trial. The most arguable exception would be the statement made for medical diagnosis or treatment exception under Fed. R. Evid. 803(4). However, Dr. Esquiva's alleged statement was not made to Plaintiff for a medical diagnosis or treatment, but instead, is merely a statement suggesting blame.

[7] (ECF No. 96 at 3.)

sworn allegation, Dr. Alvarez immediately told Plaintiff on February 24, 2015 that Plaintiff *might* need steel plates. (ECF No. 1 at 8.) There is no evidence that the steel plates and screws were somehow attributable to Dr. Alvarez.

In its simplest terms this case is one in which the Plaintiff wanted different treatment. Plaintiff thought he should have been sent immediately to the hospital for surgery and should have seen a specialist immediately. While seeing a specialist immediately may have been an option, the failure to do so is not attributable to Dr. Alvarez. Dr. Alvarez submitted the request for Plaintiff to see a specialist at the inception of the treatment. After Dr. Alvarez submitted the request to utilization management for approval of a specialist he had no further control over the timing of the visit.

Where, as here, the medical records demonstrate that the inmate received adequate treatment, an inmate's desires and subjective beliefs are insufficient to demonstrate a genuine issue of material fact. *See Waddell*, 276 F.3d at 1279; *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that []he did not feel []he received adequate treatment."). Even viewing the

evidence in the light most favorable to Plaintiff, no reasonable jury could

conclude that Dr. Alvarez was deliberately indifferent to Plaintiff's serious

medical needs.

Plaintiff has failed to demonstrate that a genuine issue of material

fact exists regarding Dr. Alvarez's treatment of Plaintiff's fractured tibia.

Similarly, the evidence before the Court does not demonstrate that Dr.

Alvarez was deliberately indifferent to Plaintiff's serious medical need.

Accordingly, Dr. Alvarez is entitled to judgment as a matter of law.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendant Dr. Jorge Alvarez's motion for summary judgment, ECF
No. 89, should be **GRANTED**.

**IN CHAMBERS** this 29th day of July, 2016.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be
filed within fourteen (14) days after being served a copy thereof. <u>Any
different deadline that may appear on the electronic docket is for the
Court's internal use only, and does not control.</u> A copy of objections
shall be served upon all other parties. If a party fails to object to the
magistrate judge's findings or recommendations as to any particular**

**claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**