IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOHN PAVAO,

     Plaintiff,

v.                                     CASE NO. 5:15-cv-68-RH-GRJ

SGT. MILES, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

     This matter is before the Court on ECF No. 100, Defendants' Motion for Summary Judgment. Plaintiff has filed a response in opposition. (ECF No. 131.) The motion is, therefore, ripe for review. For the reasons explained below, it is recommended that the motion be granted.

## I.  INTRODUCTION

     Plaintiff brings this claim under 42 U.S.C. § 1983, based on alleged threats from Defendant Miles, a cell extraction— in which Plaintiff says he was beaten and his leg was broken—and alleged retaliatory disciplinary charges. Plaintiff names six Defendants: (1) Sergeant Miles; (2) Officer

Swearingen; (3) Captain Carlson;[1] (4) Captain Jenkins; (5) Officer

Johnson; and (6) Dr. Alvarez. (ECF No. 1.)[2] Plaintiff alleges that Defendant

Miles and Swearingen used excessive force against him in violation of the

Eighth Amendment and placed false disciplinary reports ("DRs") on Plaintiff

in retaliation for Plaintiff filing lawsuits in violation of the First Amendment

and to cover up their use of excessive force. Additionally, Plaintiff alleges

that Defendants Carlson, Jenkins, and Johnson failed to protect Plaintiff

from Defendant Miles in violation of the Eighth Amendment.[3]

Defendants request that the Court enter summary judgment in their

favor arguing that: (1) no reasonable jury could conclude that the use of

force in this case was unreasonable; (2) no reasonable jury could conclude

that Defendants Johnson, Jenkins, or Carlson failed to protect Plaintiff; (3)

Plaintiff's retaliation claim is barred by *Heck v. Humphrey*[4] and *Edwards v.*

---

[1] The correct name for Defendant is Captain Carlson, not Carson. The **Clerk** is directed to correct the docket accordingly.

[2] Plaintiff's claims against Dr. Alvarez were dismissed on the merits on November 28, 2016. (ECF Nos. 128–29.)

[3] Plaintiff does not allege that Defendant Miles, Defendant Swearingen, Defendant Carlson, Defendant Johnson, or Defendant Jenkins were deliberately indifferent to a serious medical need.

[4] 512 U.S. 477 (1994).

*Balisok*;[5] (4) Defendants are entitled to Eleventh Amendment immunity;

and (5) Defendants are entitled to qualified immunity. (ECF No. 100.)

In support of their motion, Defendants have submitted: (1) Defendant

Miles' sworn declaration (ECF No. 100-1 ("Miles Dec.")); (2) Defendant

Swearingen's sworn declaration (ECF No. 100-2 ("Swearingen Dec.")); (3)

Defendant Carlson's sworn declaration (ECF No. 100-3 ("Carlson Dec."));

(4) Defendant Jenkins' sworn declaration (ECF No. 100-4 ("Jenkins

Dec.")); (5) Defendant Johnson's sworn declaration (ECF No. 100-5

("Johnson Dec.")); (6) a fixed-wing video (ECF No. 100-6 ("FW Video")); (7)

a use of force report (ECF No. 100-7 ("UOF Report")); (8) Plaintiff's

deposition (ECF No. 100-8 ("Pl. Depo.")); (9) Plaintiff's medical report (ECF

No. 100-9 ("Pl. MR")); (10) Plaintiff's complaint filed in *Pavao v. Jenkins*,

No. 5:15-cv-67-WS-CJK (N.D. Fla. Oct. 15, 2015) (ECF No. 100-10

("*Pavao 1*")); and (11) two of Plaintiff's Disciplinary Reports (ECF No. 100-

11 ("DR")).

The Court issued a summary judgment notice on April 22, 2016,

advising Plaintiff that he was required to file any supporting evidentiary

materials, such as sworn counter-affidavits, depositions, and exhibits,

within 21 days, and may not rely solely on the allegations of the issue

---

[5] 520 U.S. 641 (1997).

pleadings in opposing the summary judgment motion. (ECF No. 106.)

Following several extensions of time, Plaintiff filed his response in

opposition to the motion for summary judgment on November 11, 2016.

(ECF No. 131.)

Under Fed. R. Civ. P. 56(c),

[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Furthermore,

[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56( c), the court may:
(1) give an opportunity to properly support or address the fact;
(2) consider the fact undisputed for purposes of the motion;
(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In this case, Plaintiff declined to submit any evidentiary materials in

opposition to summary judgment. Instead, he merely clarifies which of

Defendants' facts he disputes. Notably, his response was not sworn or

submitted under penalty of perjury.

Nonetheless, 28 U.S.C. § 1746 provides,

[w]herever, under any . . . rule, . . . any matter is required or permitted to be supported, evidence, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidence, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated . . . .

Although Plaintiff did not submit any sworn affidavits or other evidentiary

materials in opposition to summary judgment, Plaintiff's complaint is signed

under penalty of perjury. (ECF No. 1.) Thus, Plaintiff's complaint is properly

treated by the Court like a sworn affidavit. *See Sammons v. Taylor*, 967

F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that

facts alleged in an inmate's sworn pleading are sufficient [to defeat a

properly supported motion for summary judgment] and that a separate

affidavit is not necessary."). The sworn allegations in Plaintiff's complaint,

therefore, may be considered in ruling on the motion for summary

judgment.[6]

## II.  EVIDENCE

Plaintiff suffered an assault when another inmate hit Plaintiff with a lock in the head and left leg. (Pl. Depo. 62:8–9.) After the assault x-rays of his left tibia, fibula and skull were taken on February 18, 2015.  (Pl. MR at 1, 3.) The x-ray of Plaintiff's left tibia and fibula revealed a "[p]ossible small avulsion fracture off the tip of the distal tibia." (*Id.* at 1.) The x-ray of Plaintiff's skull was normal. (*Id.* at 3.) Defendant Miles and Defendant Swearingen were unaware of the fracture. (Miles Dec. ¶ 7; Swearingen Dec. ¶ 7.)

Plaintiff says that sometime during the day on February 20, 2015, Defendant Miles told Plaintiff that he was going to have Plaintiff killed because of a lawsuit Plaintiff filed. (ECF No. 1 at 6 ("Compl."); Pl. Depo. 78:8–12.) According to Defendant Miles, he denies telling Plaintiff that he was going to kill Plaintiff, and denies that he was aware of any lawsuits that Plaintiff filed. (Miles ¶ 7.) Nonetheless, Plaintiff says he became scared and the next morning he gave Defendant Johnson a complaint to give to Defendant Jenkins. (Compl. at 6; Pl. Depo. 79:1–9.) The complaint stated

---

[6] Consequently, the facts asserted by Plaintiff upon which the undersigned will rely for purposes of this Report and Recommendation are contained within Plaintiff's sworn complaint, ECF No. 1.

that Plaintiff was in fear of Defendant Miles and asked that Defendant Miles be kept away from Plaintiff. (Pl. Depo. 79:11–15.) According to Plaintiff, Defendant Johnson told Defendant Miles about the complaint. (Compl. at 6.) Defendant Johnson, however, says Plaintiff never gave Defendant Johnson any information regarding Plaintiff being scared of Defendant Miles. (Johnson Dec. ¶ 4.) In addition, Defendant Johnson avers that he did not tell Defendant Miles that Plaintiff had given him documentation evidencing that Plaintiff was scared of Defendant Miles. (*Id.*)

On February 21, 2015, Defendant Swearingen requested Defendant Miles to respond to cell Y2108 to help restrain Plaintiff and his cellmate so the cellmate could be moved to another cell, and so Plaintiff's property could be removed from the cell. (Miles Dec. ¶ 3; Swearingen Dec. ¶ 3.) Another officer also arrived but then briefly left the area. (Pl. Depo. 91:9–19; FW Video.) Defendant Miles ordered Plaintiff's cellmate to cuff up. (Compl. at 6.) Defendant Swearingen removed Plaintiff's cellmate and the cellmate walked out of the cell holding a bag. (Miles Dec. ¶ 4; Swearingen Dec. ¶ 4; FW Video.) The third officer returned and escorted the cellmate down the hallway to another cell. (*Id.*) Defendant Miles then ordered Plaintiff to cuff up. (Compl. at 6.)

At about 8:53:12, Defendant Swearingen leaned into Plaintiff's cell and pulled Plaintiff's mattress and linens out of the cell approximately four seconds later. (Miles Dec. ¶ 4; Swearingen Dec. ¶ 4; UOF Report at 1; FW Video.) While Defendant Swearingen did so, Plaintiff began swinging his legs in a kicking motion toward Defendant Swearingen. (Miles Dec. ¶ 4; Swearingen Dec. ¶ 4; UOF Report at 1.) Then, at approximately 8:53:31, Defendant Swearingen entered Plaintiff's cell while Defendant Miles remained outside. (FW Video.) Defendant Swearingen grabbed Plaintiff's left upper arm with his right hand and the front of Plaintiff's shirt with his left hand to gain control of Plaintiff and remove Plaintiff from the cell. (Miles Dec. ¶ 4; Swearingen Dec. ¶ 4; UOF Report at 1.) Plaintiff pulled away from Defendant Swearingen and dropped to the floor, pulling Defendant Swearingen into the cell with him. (Miles Dec. ¶ 5; Swearingen Dec. ¶ 5; UOF Report at 1.) At about 8:53:39, Defendant Miles leaned into Plaintiff's cell and grabbed Plaintiff's left arm with both of his hands. (Miles Dec. ¶ 5; Swearingen Dec. ¶ 5; UOF Report at 1; FW Video.) Then at approximately 8:53:45, Defendant Swearingen exited the cell and both he and Defendant Swearingen pulled Plaintiff out of the cell. (*Id.*)

After Defendant Miles and Defendant Swearingen pulled Plaintiff from his cell, Plaintiff held his left foot up behind him and refused to walk.

(Miles Dec. ¶ 5; Swearingen Dec. ¶ 5; UOF Report at 1, 4, 6; FW Video.) Defendant Miles and Defendant Swearingen supported Plaintiff by both arms and escorted Plaintiff to the Y-dorm officer station holding cell HC-2 ("HC-2"). (*Id.*) They reached HC-2 at approximately 8:54:35, sat Plaintiff down on the cell bench, locked the door, and left. (FW Video.)

While Plaintiff was in HC-2, Defendant Carlson was informed of the incident. (Miles Dec. ¶ 6; Swearingen Dec. ¶ 6; Carlson Dec. ¶ 4.) Defendant Carlson arrived to HC-2 at approximately 9:08:46, wearing a white shirt. (FW Video.) Another officer appeared at approximately 9:10:14 and Defendant Carlson and the officer picked Plaintiff up and escorted him out of the cell. (*Id.*)

Post-use-of-force filming subsequently began. (Miles Dec. ¶ 6; Swearingen Dec. ¶ 6; Carlson Dec. ¶ 4; UOF Report at 1, 3–5.) Plaintiff was compliant but refused to walk, claiming that his leg was broken. (UOF Report at 1, 5.) Defendant Carlson and the officer escorted Plaintiff to the Y-dorm medical exam room for evaluation. (UOF Report at 5.) Two other officers followed, one of whom was filming. (FW Video.)

Plaintiff's version of the story, however, differs greatly. Plaintiff says that after his cellmate was removed Plaintiff became nervous and thought something was going on. (Compl. at 6; Pl. Depo. 90:13–25.) Consequently,

he refused to cuff up and asked to speak to Defendant Carlson, the

Captain on duty. (*Id.*) Defendant Swearingen told Plaintiff he was not going

to speak to Defendant Carlson and again ordered Plaintiff to cuff up. (Pl.

Depo. 91:2–4.) Plaintiff says that Defendant Swearingen and Defendant

Miles then entered his cell and Officer Swearingen started beating Plaintiff

in the ribs even though Plaintiff was not fighting back. (Compl. at 7; Pl.

Depo. 92:1–11.) Defendant Swearingen, however, says he did not strike

Plaintiff at any time. (Swearingen ¶ 7.) According to Plaintiff, Defendant

Carlson then arrived wearing a white shirt and holding a camera. (Compl.

at 7; Pl. Depo. 92:12–14.) Defendant Carlson ordered the third unnamed

officer to film the incident. (Pl. Depo. 92:14–15.) Once Defendant

Swearingen saw Defendant Carlson, he stopped hitting Plaintiff and started

pushing Plaintiff. (Compl. at 7; Pl. Depo. 92:16–19.) Defendant Carlson

avers, however, that he was not present during the incident, nor did he

witness it. (Carlson Dec. ¶ 4.)

Plaintiff says Defendant Miles then grabbed Plaintiff's mattress and

pulled the mattress out of the cell. (Compl. at 7; Pl. Depo. 92:20–23.)

Defendant Miles grabbed Plaintiff's shirt trying to pull Plaintiff out of the cell

but Plaintiff resisted, bracing his legs against both sides of the cell door

doing everything he could to stay in the cell. (Pl. Depo. 92:23–25, 93:1–3;

118:9–14.)  Plaintiff's left leg slid under the rail of the cell door, got stuck,

and broke as Defendant Miles and Defendant Swearingen pulled Plaintiff

out. (Compl. at 7; Pl. Depo. 93:4–15.) Plaintiff says he started yelling for

help and that his leg was broken but Defendants thought he was lying. (Pl.

Depo. 93:15–16.) Defendant Carlson told Plaintiff he was going to Medical.

(*Id.* at 94:1.) Plaintiff told Defendant Carlson he needed a wheelchair but

Defendant Carlson refused to get one for Plaintiff and instead made

Plaintiff walk to Medical. (*Id.* at 94:1–21.)

A nurse evaluated Plaintiff in the Y-dorm medical exam room. (UOF

Report at 1.) Plaintiff was alert, oriented to person, place, time, and

situation, and responded to questions verbally. (*Id.* at 8.) He complained of

left lower extremity pain. (*Id.*) Although there was a wrap on his left lower

extremity, there was no edema, erythema, or deformity to his left lower

extremity. (*Id.* at 8–9.) He also had a wrap on his head, as well as a small,

superficial scratch and interrupted scab on his right elbow. (*Id.*) The nurse

concluded that Plaintiff had no new injuries. (*Id.* at 5.) The officers then

escorted Plaintiff back to his original cell. (FW Video.)

Defendant Johnson was not present during the use-of-force incident,

nor did he witness it. (Johnson Dec. ¶ 4; Pl. Depo. 115:12–14.) Defendant

Jenkins was also not present during the incident, nor did she witness it.

(Jenkins Dec. ¶ 4; Pl. Depo. 114:16–17.) In addition, Defendant Jenkins says she was never notified by anyone that Plaintiff was in fear of his life from Defendant Miles. (Jenkins Dec. ¶ 4.)

Later that day, Defendant Swearingen completed a Disciplinary Report Worksheet alleging that Plaintiff disobeyed Defendant Swearingen's orders. (DR at 4.) Following an investigation, Plaintiff was found guilty of disobeying orders. (*Id.* at 10.) Thus, Plaintiff was placed in disciplinary confinement for 30 days. (*Id.*)

That same day, another disciplinary report alleged that while Defendant Swearingen attempted to remove Plaintiff from his assigned cell for placement on property restriction, Plaintiff became combative by swinging his leg in a kicking motion in an attempt to strike the Defendant Swearingen and cease the removal of his property. (*Id.* at 1.) The incident was investigated and Plaintiff was found guilty of battery on an officer. (*Id.*) As a result, Plaintiff lost 266 days of gain time and was placed in disciplinary confinement for 60 days. (*Id.*)

Plaintiff says both of the disciplinary reports were false. (Compl. at 7.) He says the disciplinary reports were written in retaliation for filing lawsuits and in an attempt to cover up the assault on Plaintiff. (*Id.*)

On February 25, 2015, Dr. Alvarez took an x-ray of Plaintiff's left leg.

(*Id.* at 8.) Dr. Alvarez discovered that Plaintiff's left leg was broken and that Plaintiff needed surgery. (*Id.*)

Upon review of the UOF Report, the post-use-of-force video recording, the fixed wing video recording, and associated medical documentation, the Correctional Officer Chief, Assistant Warden, and Warden all agreed that the application of force was in compliance with the rules governing the use of force found in Fla. Admin. Code 33-602.210. (UOF Report at 2–4.) The Inspector General also determined that the application of force by Defendant Miles and Defendant Swearingen complied with rules and procedures. (*Id.* at 2.)

## III.  SUMMARY JUDGEMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988). But, "when opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a

court should not adopt that version of the facts for purposes of ruling on a

motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284

(11th Cir. 2013) (internal quotations and citations omitted); *see also*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (to defeat

summary judgment "there must be evidence on which the jury could

reasonably find for the plaintiff") "The nonmovant need not be given the

benefit of every inference but only of every reasonable inference." *Brown v.*

*City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988) ("The

summary judgment standard requires that we resolve all reasonable

doubts in favor of the non-moving party, but it does not require us to

resolve all doubts in such a manner.").

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317

(1986), the moving party bears the initial burden of establishing the

nonexistence of a triable issue of fact. If the movant is successful on this

score, the burden of production shifts to the non-moving party who must

then come forward with "sufficient evidence of every element that he or she

must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).

The non-moving party may not simply rest on the pleadings, but must use

affidavits, depositions, answers to interrogatories, or other admissible

evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## IV.  DISCUSSION

### A.  Eleventh Amendment Immunity

As an initial matter, Plaintiff does not clarify whether his claims are asserted against Defendants in their official or individual capacities. To the extent, however, that his claims are against Defendants in their official capacities, Defendants are entitled to Eleventh Amendment immunity.

The Eleventh Amendment provides the concept of sovereign immunity. U.S. Const. amend. XI. Sovereign immunity prohibits a state or one of its agencies or departments from being sued in federal court unless the state consents. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A suit against a state employee in an official capacity is a suit against the state for Eleventh Amendment purposes. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). Florida has not waived its sovereign

immunity or consented to be sued in damage suits brought pursuant to §

1983, nor has it waived its sovereign immunity for constitutional torts.

*Gamble v. Fla. Dep't of Health & Rehabilitative Servs.,* 779 F.2d 1509,

1513 (11th Cir. 1986); *Hill v. Dep't of Corrections*, 513 So. 2d 129, 133

(Fla. 1987); Fla. Stat. § 768.28(18).

It is undisputed that Defendants are all state employees. Thus, to the

extent Plaintiff's claims are against Defendants in their official capacities,

the claims are barred by sovereign immunity. Accordingly, Defendants are

entitled to judgment as a matter of law on all claims asserted against them

in their official capacities.

## B.  Excessive Force

Plaintiff alleges that Defendant Miles and Defendant Swearingen

used excessive force against Plaintiff in violation of the Eighth Amendment.

Defendants contend, however, that the use of force was necessary to

prevent Plaintiff from assaulting correctional staff and to seek compliance

with an order.

The use of excessive physical force against a prisoner may

constitute cruel and unusual punishment in violation of the Eighth

Amendment. *Hudson v. McMillian*, 503 U.S. 1, 4 (1992). In determining

whether the force used was excessive, the inquiry is "whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7; *Whitley v. Albers*, 475 U.S. 312, 319–21 (1986).

To prevail on an excessive force claim against a prison official, an inmate must establish both a subjective and objective component. *Id.* at 8; *Johnson v. Moody*, 206 F. App'x 880, 883 (11th Cir. 2006). The subjective component requires proof that the prison official acted "with a sufficiently culpable state of mind." *Id.* The objective component requires proof that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 9). Generally, *de minimis* uses of physical force and *de minimis* injuries do not give rise to a constitutional claim. *Id.* at 38 (citing *Hudson*, 503 U.S. at 9–10). "Eighth Amendment claims based on *de minimis* uses of physical force by prison guards are not cognizable unless they involve 'force that is repugnant to the conscience of mankind.'" *Johnson*, 206 F. App'x at 884–85 (quoting *Hudson*, 503 U.S. at 9–10); *see Black v. Butler*, No. 2:12-CV-0633-LSC-PWG, 2013 WL 6085980, at *9 (N.D. Ala. Nov. 19, 2013) ("The slap by one officer and the thump in the eye by another are *de minimus* intrusions that do not violate

the Eighth Amendment."); *Washington v. Wigington*, No. 1:12-CV-0637-WSD-JFK, 2012 WL 3834844, at *5 (N.D. Ga. July 27, 2012) (holding that although the prisoner was subdued, the officer's striking the prisoner in the head three times without enough force to injure did not amount to excessive force).

As an initial matter, no reasonable jury could conclude that Defendant Swearingen or Defendant Miles used excessive force against Plaintiff prior to removing Plaintiff from his cell. Although Plaintiff claims that Defendant Swearingen and Defendant Miles entered his cell, that Defendant Swearingen beat Plaintiff in his ribs, and that Defendant Swearingen did not stop until Defendant Carlson showed up with the camera, all the other evidence on file refutes this claim. Notably, not only does Plaintiff's assertion in his complaint contradict Defendant Swearingen, Defendant Miles, and Defendant Carlson's sworn statements and testimony, the fixed-wing video conclusively refutes Plaintiff's story.

A review of the fixed-wing video discloses that neither Defendant Swearingen nor Defendant Miles entered the cell until Defendant Swearingen entered briefly to retrieve and remove Plaintiff's mattress, conduct that took only approximately four seconds. The video also evidences that the only officers present in the wing at that time were

Defendant Swearingen, Defendant Miles, and the third unnamed officer, who was putting Plaintiff's cellmate into a separate cell further down the hall. Defendant Carlson was not present, nor was anyone else wearing a white shirt or holding a camcorder. No reasonable jury could believe Plaintiff's claims that he was beaten by Defendant Swearingen prior to being removed from the cell because the unrefuted evidence contradicts those claims. Accordingly, the Court declines to adopt Plaintiff's unsupported version of facts for purposes of ruling on Defendants' motion for summary judgment. *Morton*, 707 F.3d at 1284*.*

Even taking Plaintiff's version of the facts as true, Defendant Swearingen and Defendant Miles are entitled to summary judgment on Plaintiff's excessive force claims concerning Plaintiff's removal from the Y-2 cell.  The Court must consider five factors in determining whether force was used sadistically and maliciously:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

*Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions

before responding." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). "When we consider whether the jailers' use of force was excessive, we must 'give a wide range of deference to prison officials acting to preserve discipline and security.'" *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 1990) (quoting *Bennett*, 898 F.2d at 1533). Even where an inmate is not physically resisting and is instead refusing to follow orders, the use of force may be necessary. *See Sanchez v. McCray*, 349 F. App'x 479, 482–83 (11th Cir. 2009) (use of force was necessary to gain control of inmate and force him to comply with orders where inmate admitted that he refused fo comply with orders to surrender his personal belongings); *Brown v. Smith*, 813 F.2d 1187, 1189 (11th Cir. 1987) (inmate's refusal to enter his cell when ordered to do so and resisting guard's attempt to take his arm and lead him into the cell necessitated application of force by pinning inmate against wall by his neck with a riot baton).

Nothing suggests that Defendant Swearingen or Defendant Miles utilized sadistic or malicious actions in removing Plaintiff from his cell. Despite Plaintiff's assertion that he was afraid of Defendant Miles, Plaintiff nonetheless admits that he refused to cuff up as ordered. The evidence demonstrates that after failing to comply with several orders, Defendant Swearingen and Defendant Miles tried to regain control of Plaintiff and pull

him out of his cell by his upper body. Plaintiff further admits that while

Defendant Miles and Defendant Swearingen were trying to remove Plaintiff

from his cell, he did everything he could to resist his removal from his cell.

Plaintiff admits bracing his legs on either side of the door and doing

everything he could to prevent his removal from the cell. There is no

evidence that Defendant Swearingen or Defendant Miles purposely placed

Plaintiff's leg under the door or that Defendants knew Plaintiff's leg was

under the door when they tried to pull him up and out of the cell. Nor is

there any evidence that in the process of removing Plaintiff from his cell

that Defendant Swearingen or Defendant Miles hit, punched, kicked, or

otherwise utilized physical force. There is also no evidence that Defendant

Swearingen or Defendant Miles knew that Plaintiff had a possible fracture.

Any reasonable official would find it necessary to regain control of an

inmate refusing to cuff up and refusing to exit his cell.

Even though Plaintiff was later assessed with a broken leg, the

evidence demonstrates that prior to the incident, Plaintiff had a "[p]ossible

small avulsion fracture off the tip of the distal tibia." (Pl. MR at 1.)

Immediately following the incident, there was no edema, erythema, or

deformity to Plaintiff's left lower extremity. Thus, the fracture was not of

such a severity that it created obvious injury to Plaintiff's leg. Although it is

impossible to pinpoint the amount of force applied in pulling Plaintiff to his feet while his leg slid under the door, the evidence suggests that the amount of force used was reasonable in light of the fact that Plaintiff admits he was doing everything he could to stay inside the cell.  Even though Plaintiff may have suffered injury as a by product of his removal form the cell, Plaintiff has failed to establish the subjective component required in an excessive force claim.

Viewing the evidence in the light most favorable to Plaintiff, Defendant Swearingen and Defendant Miles applied force in an effort to restore discipline and obtain compliance with their orders. Accordingly, no reasonable jury could conclude that Defendant Swearingen or Defendant Miles utilized sadistic behavior to cause Plaintiff harm. Defendant Swearingen and Defendant Miles therefore are entitled to summary judgment on Plaintiff's excessive force claims.[7]

---

[7] Plaintiff does not assert a cruel and unusual punishment claim against Defendant Miles based on the alleged threat to kill Plaintiff. Nonetheless, even if he had, no reasonable jury could conclude that such a threat violated Plaintiff's Eighth Amendment right. "'[V]erbal threats, without more,' are insufficient 'to state a cause of action under the Eight Amendment.'" *Wilson v. Silcox* , 151 F. Supp. 2d 1345, 1352 (N.D. Fla. 2001) (quoting *Chandler v. Dist. of Columbia Dep't of Corrections*, 145 F.3d 1355, 1360 (D.C. Cir. 1998)); *see also Hernandez v. Fla. Dep't of Corrections*, 281 F. App'x 862, 866 (11th Cir. 2008) (allegations of threats did not state a claim because the defendants never carried out these threats). Verbal threats resulting in psychological harm may, however, in very limited circumstances, constitute cruel and unusual punishment. *See Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (sexual harassment or sexual abuse may well result in severe and psychological harm constituting unnecessary and wanton infliction of pain); *Babcock v. White*, 102 F.3d 267, 273 (7th Cir. 1996) ("the Constitution does not countenance psychological torture

## C.  Failure to Protect

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To prevail on an Eighth Amendment failure to protect claim, the inmate must prove: (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) causation. *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quoting *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995)). Merely because a defendant should have perceived a risk but did not is insufficient to establish a failure to protect claim. *Campbell*, 169 F.3d at 1364; *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996). The defendant "must both be aware of facts from which the inference could be

---

merely because it fails to inflict physical injury"); *Northington v. Jackson*, 973 F.2d 1518, 1522–24 (10th Cir. 1992) (finding that psychological injury may constitute pain under excessive force standard where parole officer held gun to prisoner's head while threatening to kill the prisoner).

Even assuming Defendant Miles did threaten to kill Plaintiff, there is no evidence that Defendant Miles attempted to carry out this threat. Although Plaintiff says he was scared of Defendant Miles and therefore refused to exit his cell, there is no evidence suggesting that Defendant Miles or Defendant Swearingen ordered Plaintiff to exit his cell to harm Plaintiff. Plaintiff admits he refused to exit his cell and admits he did everything he could to stay inside the cell, thereby prompting Defendant Miles and Defendant Swearingen to pull Plaintiff out of the cell. Even if Plaintiff interpreted this conduct as threatening, "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). Moreover, once Plaintiff was outside of his cell, there is no evidence, nor does Plaintiff contend, that Defendant Miles attempted to harm Plaintiff. Accordingly, even if Plaintiff had asserted a cruel and unusual punishment claim against Defendant Miles based on the threat to kill Plaintiff, Defendant Miles would be entitled to summary judgment.

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

In addition, a prison official who was present at the scene and failed to take reasonable steps to protect the victim from another officer's use of excessive force, can be liable for his own nonfeasance. *Johnson*, 206 F. App'x at 883 (quoting *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)). An officer has a duty to intervene if he observes a constitutional violation and is in a position to intervene. *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998).

Turning first to Defendant Jenkins, the record is completely devoid of any evidence demonstrating that Defendant Jenkins was aware that Plaintiff feared Defendant Miles. Although Plaintiff claims he gave Defendant Johnson a compliant to give to Defendant Jenkins asking her to keep Defendant Miles away from Plaintiff, there is no evidence that Defendant Jenkins ever received such a complaint. Furthermore, Defendant Jenkins was not present during the cell extraction, nor did she witness it. Plaintiff's failure to protect claim against Defendant Jenkins wholly fails as a matter of law.

With respect to Defendant Johnson, it is undisputed that Defendant Johnson was not present during the extraction, nor did he witness it.

Even assuming Plaintiff did tell Defendant Johnson that he was scared of Defendant Miles, it is undisputed that Plaintiff was injured when his leg slid underneath the cell door while Plaintiff resisted the extraction. Nothing suggests that Defendant Johnson was somehow the cause of Plaintiff's injury. Further, even assuming for purposes of this motion that Defendant Johnson had told Defendant Miles that Plaintiff tried to file a complaint with Defendant Jenkins, there is no evidence that Defendant Miles extracted Plaintiff from his cell because of the complaint. Instead, the undisputed evidence demonstrates that Defendant Miles and Defendant Swearingen extracted Plaintiff from his cell because Plaintiff refused several orders to cuff up. Moreover, the undisputed evidence demonstrates that Plaintiff deliberately resisted the extraction by bracing himself against both sides of the cell door while Defendant Swearingen and Defendant Miles tried to pull Plaintiff out of the cell.

Similarly, as to Defendant Carlson, the evidence wholly refutes Plaintiffs claim that Defendant Carlson was present during the extraction. The fixed-wing video evidences that there was no one wearing a white shirt present at the time of the extraction, nor was anyone else present other than the third unnamed officer who is depicted putting Plaintiff's cellmate into a separate cell down the hallway. Nor is there any evidence that

Defendant Carlson previously had been informed that Plaintiff feared

Defendant Miles. No reasonable jury could conclude that Defendant

Carlson failed to protect Plaintiff.

Accordingly, Defendant Jenkins, Defendant Johnson, and Defendant

Carlson are entitled to summary judgment on Plaintiff's failure to protect

claims.

## D.  Retaliation

Defendants contend that Plaintiff's retaliation claim is *Heck*-barred.

Under *Heck,* state prisoners are barred from pursuing § 1983 actions that,

if successful, would necessarily imply the validity of a plaintiff's conviction.

512 U.S. at 477. In considering whether a § 1983 claim is *Heck*-barred, the

Court must determine whether a plaintiff's factual allegations, if proven,

would necessarily undermine the validity of the plaintiff's conviction.

*Edwards v. Balisok*, 520 U.S. 642, 646–48 (1997). A prisoner's § 1983

claim is also *Heck*-barred where the action, if successful would necessarily

imply the invalidity of a prison disciplinary conviction. *Id.* at 648; *Roberts v.

Wilson*, 259 F. App'x 226, 229 (11th Cir. 2007). "If a prisoner is found guilty

of an actual disciplinary infraction after being afforded due process and

there was evidence to support the disciplinary panel's fact finding, the

prisoner cannot later state a retaliation claim against the prison employee

who reported the infraction in a disciplinary report." *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011). But, "as long as it is possible that a § 1983 suit would not negate the underlying conviction, then the suit is not *Heck*-barred." *Dyer v. Lee,* 488 F.3d 876, 879–80 (11th Cir. 2007); *see Beecher v. Jones*, No. 3:08-cv-416, 2010 WL 5058555 (N.D. Fla. Oct. 29, 2010 (plaintiff's excessive force claim was not *Heck*-barred because although Plaintiff could have committed all of the acts in the disciplinary report and decision, the manner in which the chemical agent was applied could still constitute the use of excessive force).

Plaintiff's retaliation claim is *Heck*-barred because a finding that the disciplinary reports were issued in retaliation would necessarily undermine the disciplinary reports and the subsequent convictions. *See Miller v. Johnson*, No. 2:09-cv-524-FtM-36DNF, 2011 WL 2174361, at *7 (M.D. Fla. June 2, 2011) (plaintiff's retaliation claims were *Heck*-barred because a finding that the disciplinary report was issued in retaliation would undo the disciplinary report and the disciplinary hearing team's guilty finding).

As an initial matter, Plaintiff admits that he refused to obey Defendant Swearingen and Defendant Miles' orders. The failure to comply resulted in one of the disciplinary reports and resulting conviction. Yet, Plaintiff claims that the officers wrote false disciplinary reports to cover up what had

actually happened. It is axiomatic, however, that a false disciplinary charge cannot be based on conduct in which Plaintiff admits he committed.

On the other hand, Plaintiff claims that he did not swing his legs toward Defendant Swearingen or assault anyone, and that the battery report was issued in retaliation and to cover up the assault by Defendant Swearingen and Defendant Miles. Thus, according to Plaintiff, the alleged retaliatory conduct with respect to the battery report is the false disciplinary charge of battery. Notably, however, Plaintiff was found guilty of battery on an officer because Plaintiff "became combative by swinging his leg in a kicking motion in an attempt to strike the officer and cease the removal of his property." (DR at 1.)

Based on Defendant Swearingen's statements and subsequent investigations, Plaintiff was found guilty of failing to obey orders and battery on an officer. The evidence filed in support of the motion also supports these findings. Nothing suggests, nor does Plaintiff contend, that he was somehow denied due process with respect to either hearing.

Finally, there is no evidence that either of Plaintiff's disciplinary convictions were overturned. "Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel."

*O'Byrant*, 637 F.3d at 1215. Where, as here, a retaliation claim would undermine those findings, the retaliation claim is barred. Accordingly, Plaintiff's retaliation claim fails as a matter of law.

### E.  Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Discretionary authority" includes all actions by a government official that "were undertaken pursuant to the performance of his duties," and were "within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)).

To determine whether qualified immunity applies to a government official performing a discretionary function, a court must consider two factors: (1) whether the evidence shows that the official's conduct violated a constitutional right; and (2) whether the right was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009). A court has the discretion to address the two prongs in either order. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be

clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000) (citing *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994)).

The undisputed evidence demonstrates that Defendants were state prison officials acting within their discretionary authority. Thus, Plaintiff must show that Defendants violated Plaintiff's clearly established constitutional rights of which a reasonable prison official would have known.

In February 2015, it was clear that a prison official could use reasonable force to regain control and maintain discipline as long as the force is not used in a malicious or sadistic manner. *See Whitley*, 475 U.S. at 320–21. Plaintiff has pointed to no materially similar Supreme Court cases—nor is the Court aware of any—that would have given notice that extracting Plaintiff from the cell in this manner, in light of Plaintiff's resistance, violates the Eighth Amendment. Thus, Defendant Miles and

Defendant Swearingen are entitled to qualified immunity.[8]

Similarly, even assuming Defendant Johnson, Defendant Jenkins, and Defendant Carlson failed to protect Plaintiff—which they did not—they would also be entitled to qualified immunity. Again, even accepting Plaintiff's version of the facts as true, Plaintiff has failed to point to a materially similar controlling case establishing that: (1) failing to tell another officer that an inmate is afraid of a particular officer violates the Eighth Amendment; (2) failing to receive a note that an inmate is afraid of a particular officer violates the Eighth Amendment; or (3) failing to intervene in a cell extraction for failure to follow orders and failure to talk the prisoner out of the cell violates the Eighth Amendment.[9] Nor is the Court aware of any such controlling cases. Accordingly, even if Defendant Johnson, Defendant Jenkins, or Defendant Carlson had failed to intervene, they would nonetheless be entitled to qualified immunity.

---

[8] Even taking Plaintiff's allegation that Defendant Miles threatened to kill Plaintiff as true, Defendant Miles would nonetheless be entitled to qualified immunity. At the time of the incident, the law was not clearly established that a prison official's verbal threat to kill a prisoner without more violated the Eighth Amendment. Thus, Defendant Miles would not have been on notice that such conduct rose to the level of a constitutional violation.

[9] Plaintiff asserts in his response that Defendant Carlson "should have stopped what SGT. Miles and Officer Swearingen [were] doing to me and talked me out of my cell first." (ECF No. 131 at 2, ¶ 7.)

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendants' motion for summary judgment, ECF No. 100, should be **GRANTED.**

**IN CHAMBERS** this 8th day of February, 2017.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### <ins>NOTICE TO THE PARTIES</ins>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <ins>Any different deadline that may appear on the electronic docket is for the Court's internal use only, and does not control.</ins> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**